BLAIR *v.* ST. LOUIS, H. & K. R. Co. (WELLMAN and others, Intervenors.)[1]

SAME *v.* SAME. (POLLARD and another, Intervenors.)[1]

SAME *v.* SAME. (GRISHAM, Intervenor.)[1]

SAME *v.* SAME. (YAEGER, Intervenor.)[1]

(*Circuit Court, E. D. Missouri.* July 15, 1885.)

**1. RAILROAD COMPANY—RIGHT OF WAY—STATUTE OF LIMITATIONS.**

Where a railroad company enters upon land under color of title, and constructs its road across it, and remains in uninterrupted possession for more than 10 years, a suit for compensation for the right of way either by the original owner of the property, or by one who has purchased with notice that the road is in possession, will be barred by the statute of limitations.

**2. SAME—CLAIM FOR DAMAGES ASSESSED IN CONDEMNATION PROCEEDINGS.**

Where the value of a right of way is judicially ascertained in condemnation proceedings, the finding is in the nature of a judgment, and the claim will be barred if not enforced within 10 years.

**3. SAME—ESCROWS—VALIDITY OF RELINQUISHMENT OF RIGHT OF WAY TO A RAILROAD COMPANY AFTER EXECUTION BY GRANTOR OF AN ESCROW.**

A., the owner of a tract of land, executed and delivered a deed as an escrow, which purported to convey an undivided two-thirds interest in the property to his two children. Upon the back of the deed the following provision was indorsed, viz.: "The foregoing deed is not to be delivered, recorded, or take effect, except in the event of the death or the written order of the said A., and is placed in the hands of B. as an escrow. [Signed] A." This deed was not recorded until after A.'s death, which occurred in 1872. After the execution of said escrow, A. executed a deed of relinquishment of a right of way over the property described in the escrow to a railroad company, and the company went into possession under the deed of relinquishment in 1870, and it and its successors have held possession ever since, but the deed was never recorded. *Held,* that said deed was valid, and that the grantees in the escrow took subject to the railroad's right of way.

In Equity. Exceptions to master's reports.

The claims of the intervenors herein are all for compensation for rights of way over their land, and they all ask that they be decreed to have a first lien on the land claimed by them which the defendant occupies.

In the *Wellman Case* the facts were found by the master to be substantially as follows, viz.:

That on the seventh of April the property in question was conveyed to Sarah J. Wellman; that on November 17, 1868, she and her husband, H. C. Wellman, conveyed an undivided two-thirds interest in the property to their two children, intervenors herein, by a deed, upon which there was an indorsement to this effect:

"The foregoing deed is not to be delivered, recorded, or take effect, except in the event of the death or the written order of the said Henry C. Wellman, and is placed in the hands of Eli W. Southworth as an escrow.

[Signed] "SARAH J. WELLMAN.
"H. C. WELLMAN."

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

—that H. C. Wellman died September, 1872, and said deed was recorded November 26, 1872; that on July 9, 1870, Sarah J. Wellman and her husband relinquished the right of way over the property in controversy to the St. Louis & Keokuk Railroad Company by a deed which has never been recorded; and that said company entered upon and took possession of the right of way so conveyed; and that it and its successor have held continuous possession ever since. One of the grantees named in the deed of November 17, 1868, is a minor.

The facts concerning the claim of Pollard and others are, so far as they need be here stated, as follows: The right of way over the land in question was originally marked out by the Pike County Short Line Railroad Company, but the parties being unable to agree upon its value, condemnation proceedings were had in the circuit court of Pike county, Missouri, and $300 damages assessed, but the amount of the damages was never paid. Said railroad company subsequently assigned all its rights, including said right of way, to the St. Louis, Hannibal & Keokuk Railroad Company, which took possession and constructed its road over the land in 1876. The intervenors having presented their claim for compensation to the receiver herein, the latter agreed orally with them that, in consideration of a deed for the right of way, he would build a depot on the intervenor's property, and the depot has since been erected, but no deed has been executed.

In the other cases the intervenors knew that the road was in possession and operation at the time they received their deeds. In both the Grisham and Yaeger cases the master found that the defendant had received deeds of relinquishment.

*Jas. Carr*, for intervenors.

*John O'Grady*, for receiver.

*T. G. Case*, for complainant.

TREAT, J. Several intervening petitions have been filed pertaining to the right of way which, with one exception, rest on the statutes of limitation. It appears that as early as 1872 an effort was made to secure the right of way through intervenors' property, with a view of securing railroad communications. There were many informalities as to conveyances, the parties often resting on oral understandings. In the mean time the railroad corporation proceeded in its work with full knowledge of all concerned, and evidently with the desire of claimants and those whom they represented. After a lapse of some 13 years or more these various intervenors appear, seeking to avail themselves of many technical objections, concerning what theretofore occurred, regardless of interests which subsequently accrued. The railroad corporation could not take possession, for its purposes, of private property without just compensation. After the lapse of 13 or more years, it is impossible to ascertain, through defective or lost agreements, what each of the original owners of the property assented to, for their obvious benefit, in securing proposed railroad accommo-

dations. In some of these cases resort has been had to written transfers, which are lost, and in others to supposed verbal agreements.

In these cases it is obvious that all in interest, respectively, knew that the railroad was being constructed and operated. They should be charged with actual notice of the possession by the railroad of the property in question, so that, whether there was an unrecorded relinquishment or otherwise, they would be held bound under the statute of limitation, or by estoppel *in pais.* It is well known that in railroad enterprises parties along the line of said proposed road are importunate to secure the benefits thereof, and consequently offer many inducements with respect to the right of way, and otherwise. No question often arises, except as in these cases, until some party, through derivative title, acquired long after, seeks, despite the original understanding or acquiescence, to present claims on mere technical grounds. Such claims should be received with special disfavor, and no other than overruling propositions of law should be heard against the manifest intent and interest of the original parties. If the owners of the property over which this road was established did not assent thereto by formal or informal relinquishment, they should have asserted their demands within the period prescribed by the statute of limitations. This court knows of no rule that excepts parties thus negligent from observing what statutes of repose demand. They saw a railroad being constructed over their property, the same being part of a continuous line for long distances, of which the particular sections were an essential part. They never objected thereto, and now, after this long lapse of time, they appear,—the original evidence being lost,—to have this court assert that the railroad company has been a continued trespasser without any right in the premises. Why should not such parties be held to the ordinary rules of law, and consequently be barred?

If the ordinary doctrine of estoppel *in pais* is to obtain, these cases seem to fall within them with special force. It is contended that, inasmuch as the right of condemning property for public use is dependent on just compensation made, the statutes of limitation do not apply. Why should not the possession in such a case as where trespass is had on private property be governed by the same rule?

The case of the intervenors Wellman and others presents an interesting question. The court suggested to counsel their further aid with respect to the powers of the grantor after escrow, and prior to second delivery. That question has been examined, and it appears that the *usufruct* remains with the grantor. Hence any act by the grantor beneficial to the estate cannot, under any circumstances, be held void. If we look at the interests of the Wellman estate, it is obvious that the arrangements made by the grantor were such as gave new and increased value to the property. There is no equity or technical rule of law depriving the defendant corporation of its rights under the statutes of repose. Hence the exceptions to the master's re-

port in the intervening claim of Wellman and others are overruled, and petition dismissed.

The intervening claim of Pollard and others rests on the same general propositions. The measure of compensation having been determined, and the amount thereof judicially ascertained, was in the nature of a judgment, and should have been enforced within 10 years thereafter. Besides, it appears that the intervenors had, in satisfaction of their expired demand, agreed for an adjustment thereof with the receiver herein, the terms of which have been complied with.

Exceptions overruled; petition dismissed.

In the intervening claim of Grisham, exceptions overruled and petition dismissed.

The intervening claim of Yaeger falls within the rules above stated, especially when considered in connection with prior relinquishments of the right of way, however informal, but followed by possession and use for railroad purposes known to the claimant and his grantor.

Exceptions overruled. Master's report confirmed, except as to the decree of title.